IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS M. SMITH, #Y11769, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-cv-00442-JPG |
| | ) |
| DALE EDDINGS, | ) |
| RICHARD PHILLIPS, | ) |
| KENNY BENZING, | ) |
| RICH STEVENSON, | ) |
| TROY REED, | ) |
| SHERIFF GARDEN, | ) |
| LEITH SMITH, | ) |
| DANIELLE WARD, and | ) |
| ADVANCED HEALTH CARE, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court for preliminary review of Plaintiff Thomas Smith's First Amended Complaint (Doc. 13). Smith filed this civil rights action pursuant to 42 U.S.C. § 1983 to address miscellaneous constitutional deprivations that occurred during two periods of confinement at Marion County Law Enforcement Center ("Jail"). (*Id*. at 1-19). He seeks monetary, injunctive,[1] and declaratory relief against nine defendants who allegedly violated his rights under the First, Eighth, and/or Fourteenth Amendments. (*Id*.).

This matter is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous or malicious, fails to

---

[1] Although he includes a request for injunctive relief in the opening paragraph (Doc. 13, p. 1), Plaintiff does not identify what relief he seeks. This request shall be dismissed without prejudice.

1

state a claim upon which relief may be granted, or asks for money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). The factual allegations of the *pro se* complaint are liberally construed at this stage. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### First Amended Complaint

In the First Amended Complaint (Doc. 13), Plaintiff complains of the following issues that arose during two periods of confinement at the Jail from June 9, 2021 to September 25, 2021 (first detention) and January 8, 2022 to April 14, 2022 (second detention): (A) denial of physical therapy for a fractured hand; (B) denial of dental care for a broken tooth; (C) unconstitutional conditions of confinement; and (D) retaliation for filing grievances. The Court will summarize the allegations set forth in connection with these matters below.

**A.     Fractured Hand**

At the time of his arrest and first detention beginning June 9, 2021, Plaintiff's right hand was fractured and in a cast. (*Id*. at 5). Despite having a medical condition, Plaintiff was housed in a booking cell for the first twelve days of his detention. (*Id*.). On June 21, 2021, he was finally moved into medical isolation until his cast was removed thirteen days later. (*Id*. at 8).

On June 28, 2021, Plaintiff was taken to the orthopedic center in Mount Vernon, Illinois, where his fractured hand was treated prior to his detention. (*Id*. at 9). During this follow-up appointment, his doctor recommended physical therapy. Deputy Leith Smith, who accompanied Plaintiff, told the doctor not to waste his time ordering physical therapy because the county would not pay for it. In light of this statement, the doctor did not order physical therapy; he placed a new cast on Plaintiff's hand "just to be safe." (*Id*.).

When he returned for another appointment on July 8, 2021, Plaintiff could not lift or extend one of his right fingers. (*Id*.). His doctor asked Deputy Phillips, who accompanied Plaintiff, if physical therapy was an option. The deputy responded, "You can order it[,] but I guarantee the county won't approve it." (*Id*.). Based on the officer's statement, the doctor decided not to schedule an appointment with a physical therapist. (*Id*.).

When Plaintiff returned to the Jail, he asked to speak with the sheriff or jail administrator, and Eddings showed up instead. Plaintiff complained about the lack of access to physical therapy. Eddings responded, "What do you expect? You're in jail. This isn't the Mayo Clinic. You're complaining to the wrong guy. I'm not medical." (*Id*. at 9). Plaintiff asked for a grievance, and Eddings discouraged it, saying he would just deny it and instruct Plaintiff to "go to sick call." (*Id*.).

**B.    Broken Tooth**

On June 10, 2021, Plaintiff bit into something hard while eating a meal at the Jail, and one of his back molars broke. (*Id*. at 5). He pressed the intercom button and explained what just happened. Plaintiff was told to "ask the day shift" for medical treatment. (*Id*.). The following day, Plaintiff asked the day shift supervisor, Dale Eddings, for dental care for his broken tooth. (*Id*. at 6). Eddings responded, "It takes more than two days for a tooth to rot and break off[,] so you should have had it fixed before you got locked up." (*Id*.). When Plaintiff asked to speak to someone "higher up," Eddings wished him "good luck" and then slammed the chuck hole door when Plaintiff requested a grievance form. (*Id*.).

On June 14, 2021, Plaintiff again asked Dale Eddings and Richard Phillips for treatment of his broken molar. (*Id*. at 7). By this time, puss oozed from swollen gums that surrounded his broken tooth, and he was in extreme pain. The two officers ignored his request. (*Id*.).

3

When he asked for a grievance form, Phillips scoffed and said, "[O]h you're one of those inmates [who] thinks he's got rights." (*Id*.). When lunch was delivered that day, Plaintiff realized that the inside of his lunch bag was coated in pepper spray. Eddings then stopped by Plaintiff's cell and said, "That'll teach you to want grievances." (*Id*.). At this point, Plaintiff became scared to ask for any help. (*Id*.).

Plaintiff eventually reported his broken molar, infection, and pain to Nurse Danielle Ward. (*Id*. at 8). She documented his dental issue, which was treated thereafter. Plaintiff was prescribed antibiotics for the "massive" infection and was still taking antibiotics at the time he filed this action. (*Id*.).

**C.     Living Conditions**

1.     <u>Denial of Showers and Recreation</u>

Plaintiff complains about his living conditions as well. For example, Plaintiff states that he was unlawfully housed in a booking cell for twelve days from June 9, 2021 until June 21, 2021. (*Id*. at 5). While there, he was denied a shower, outdoor recreation, television, or other outside stimulation. Beginning June 11, 2021, Plaintiff requested a shower daily for three days, and each request was denied. He began to experience suicidal ideations. (*Id*.).

2.     <u>Exposure to Food Allergens</u>

Plaintiff was also forced to skip two meals because Jail staff disregarded his allergy to fin- and shellfish. Plaintiff disclosed his severe allergy during booking on June 9, 2021. (*Id*. at 6). The allergy was properly documented. Even so, Plaintiff was served fish two days later on June 11, 2021. When he requested an alternative meal, his request was denied. Plaintiff did not eat dinner that night. Then, on June 18, 2021, Plaintiff was served tuna fish. (*Id*. at 7). He told a deputy about his allergy to fin- and shellfish and requested an alternative. His request was denied.

Plaintiff smashed his lunch, pushed his lunch bag under the door, and declared a hunger strike. (*Id*.). In response, Eddings and Phillips approached Plaintiff's door and told him that "medical" had to confirm his allergies. (*Id*. at 8). Plaintiff explained that medical had yet to see him. Nurse Ward then came to his cell, had him sign an authorization for release of records, and confirmed his allergy to fin- and shellfish. But, he missed two meals before he was offered alternatives to fish. (*Id*.).

### 3. Exposure to MRSA

On July 24, 2021, Plaintiff was moved from medical isolation to the general population. (*Id*. at 10). He was housed in A-block, where two inmates were diagnosed with Methicillin-resistant Staphylococcus aureus (MRSA). Two days later, Nurse Ward allowed the A-block inmates to vote on whether they should be allowed off quarantine. Plaintiff voted "no," but he was outnumbered. The two inmates were released into the general population with MRSA. (*Id*.).

### D. Retaliatory Transfer

In September 2021, Plaintiff's little brother was hired as a jail deputy. (*Id*. at 10). A month after he was hired, Plaintiff asked his brother for grievance forms, and Plaintiff used the forms to file several grievances. Three days later, Plaintiff was transferred to Jefferson County Jail due to the "sudden" conflict of interest caused by his brother's employment at the Jail. (*Id*.).

Plaintiff was transferred back to the Jail to prepare for his trial pursuant to an Order of the Court on January 8, 2022. (*Id*.). Upon his return, Plaintiff appealed the denial of the grievances he filed during his first detention, but he learned that the time for his appeal expired. During this second period of confinement at the Jail from January 8, 2022 to April 14, 2022, he was allowed to have "all kinds of contact" with his little brother. (*Id*. at 11). Plaintiff maintains that his transfer was simply a way to avoid addressing his grievances. (*Id*.).

**Preliminary Dismissals**

Plaintiff identifies the following individuals as defendants in the case caption, but he fails to set forth any allegations against them in the statement of his claim: Rich Stevenson, Andy Garden, Kenny Benzing, and Troy Reed. The Court notes that all four individuals are former or current jail administrators or sheriffs. Merely listing each of the individuals as defendants is not enough to state a claim against them. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Plaintiff must set forth sufficient allegations to show each person's involvement in a violation of his constitutional rights. This is because an individual official "cannot be held liable in a [S]ection 1983 action unless he [or she] caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). The doctrine of *respondeat superior* liability is inapplicable in this context. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *Polk v. Dodson*, 454 U.S. 312, 325 (1981). Plaintiff must set forth allegations suggesting that each individual defendant directly participated in a deprivation of his constitutionally or federally protected rights. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). A "causal connection" or an "affirmative link" between the misconduct and the official sued is necessary. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Defendants Stevenson, Garden, Benzing, and Reed shall be dismissed without prejudice because the Complaint articulates no claim against any of them, and these defendants will not be discussed in conjunction with any claims below.

**Discussion**

Turning to the claims set forth in the *pro se* amended complaint, the Court deems it necessary and appropriate to reorganize them, as follows:

| | | |
|---|---|---|
| **Count 1:** | | Ward, Eddings, Phillips, and Smith denied Plaintiff physical therapy for his fractured hand, in violation of Plaintiff's rights under the Fourteenth or Eighth Amendment. |
| **Count 2:** | | Ward, Eddings, Phillips, and Smith denied Plaintiff dental care for his broken tooth, in violation of Plaintiff's rights under the Fourteenth or Eighth Amendment. |
| **Count 3:** | | Advanced Health Care, Inc., had a policy, custom, or practice of denying emergency dental care, in violation of Plaintiff's rights under the Fourteenth or Eighth Amendment. |
| **Count 4:** | | Eddings and Phillips retaliated against Plaintiff for attempting to file a grievance by spraying pepper spray into his lunch bag, in violation of his rights under the First Amendment. |
| **Count 5:** | | Eddings, Phillips, and Smith subjected Plaintiff to unconstitutional conditions of confinement by housing him in booking. denying him a shower, recreation, and television, and exposing him to MRSA, all in violation of his rights under the Fourteenth or Eighth Amendment. |
| **Count 6:** | | Eddings retaliated against Plaintiff for attempting to file grievances and appeals by transferring him to another institution and thereby preventing him from exhausting his administrative remedies before bringing suit, in violation of his rights under the First and/or Fourteenth Amendment(s). |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

### Counts 1 and 2

The legal standard that governs Counts 1 and 2 depends on Plaintiff's legal status when his claims arose. The claims are either governed by the Fourteenth Amendment's objective reasonableness standard for a pretrial detainee or Eighth Amendment's deliberate indifference

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

standard for a convicted person.  *See Currie v. Chhabra*, 728 F.3d 626, 628-29 (7th Cir. 2013).  Although Plaintiff does not disclose his status as a pretrial detainee or convicted prisoner when his claims arose, Counts 1 and 2 survive preliminary review against the same defendants, regardless.  *See Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019); *Miranda v. Cty. Of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *McCann v. Ogle Cty., Ill.*, 909 F.3d 881 (7th Cir. 2018) (articulating applicable legal standard for claims of denied medical care brought by prisoners (*i.e.*, Eighth Amendment) and pretrial detainees (*i.e.*, Fourteenth Amendment) under 42 U.S.C. § 1983).  The exact legal status and applicable legal standard can be determined as the case proceeds.

As for Count 1, the allegations suggest that Smith, Phillips, and Eddings responded to Plaintiff's fractured hand and need for physical therapy in an objectively unreasonable or deliberately indifferent manner.  However, there is no indication that Nurse Ward was involved in any decision regarding his care.  Accordingly, Count 1 shall proceed against Smith, Phillips, and Eddings and shall be dismissed without prejudice against Ward.

As for Count 2, the allegations suggest that Eddings and Phillips responded to Plaintiff's complaints about a painful, infected, and broken molar unreasonably or with deliberate indifference, so this claim shall proceed against both individuals.  The same cannot be said of Nurse Ward, who responded to Plaintiff's complaints by documenting them and setting up appointments for his dental care, or Smith, who was not mentioned in connection with this claim.  Accordingly, Count 2 shall receive further review against Phillips and Eddings and shall be dismissed without prejudice against Ward and Smith.

**Count 3**

Plaintiff includes a policy claim against Advanced Health Care, Inc., the private medical corporation that was responsible for providing medical care to inmates at the Jail.  Plaintiff

identifies the corporation as a defendant in the case caption and blames the corporation for the denial of his request for emergency dental care. Beyond that, Plaintiff sets forth no allegations against this defendant.

The corporation cannot be liable simply because it provided medical care at the Jail. The doctrine of *respondeat superior* is inapplicable to this defendant in a Section 1983 case. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782 (7th Cir. 2014) (*citing Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). Advanced Health Care, Inc. will only be liable if an unconstitutional policy or practice of the corporation caused a constitutional deprivation. Plaintiff blames his denial of dental care on a policy prohibiting emergency dental treatment at the Jail, but he attributes this policy to the county—not Advanced Health Care, Inc. Having set forth nothing more the conclusory allegations against this defendant, Plaintiff has fallen short of stating any claim against it. Count 3 against this defendant shall be dismissed without prejudice.

**Count 4**

An inmate has a First Amendment right to file grievances and lawsuits. *Watkins v. Kasper,* 599 F.3d 791, 798 (7th Cir. 2010). "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). To prevail on a retaliation claim, an inmate must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). The allegations suggest that Eddings and Phillips doused Plaintiff's lunch bag with pepper spray in retaliation against him for pursuing the grievance process at the Jail on or around June 14, 2021. Accordingly, Count 4 shall proceed against Phillips and Eddings.

**Count 5**

Plaintiff complains about the conditions of his confinement in 2021. These conditions include his allegedly unlawful placement in a booking cell, denial of outdoor recreation, denial of showers, exclusion from two meals, and exposure to MRSA. With a single exception, Plaintiff fails to identify any defendants who were actually responsible for placing him in these conditions. For example, he mentions no one in connection with his initial placement in a booking cell, denial of recreation, and denial of showers. Although he names Eddings, Phillips, and Ward in connection with his exposure to fin- and shellfish, Plaintiff identifies these individuals as the ones who were responsible for confirming his allergy to fish and authorizing a modified diet; no claim can proceed against them. Finally, Plaintiff's specific reference to Nurse Ward in connection with the "vote" to allow MRSA-positive inmates back into the general population falls short of stating a claim against her because Plaintiff mentions no harm that befell him as a result of this exposure; he simply complains that two sick inmates were released back into the regular population somewhere at the Jail. Count 5 shall be dismissed without prejudice against all defendants.

**Count 6**

The retaliatory transfer claim likewise fails. Plaintiff identifies Eddings in connection with it (along with several dismissed defendants). However, the allegations offer no insight into what role Eddings played in a transfer decision, and his interference with the grievance process is an argument (not claim) that Plaintiff can still use when litigation reaches summary judgment on the issue of exhaustion of administrative remedies. Count 6 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Disposition**

**IT IS ORDERED** that the First Amended Complaint (Doc. 13) survives screening, and the following claims are subject to further review against the below-listed defendants:

- **COUNT 1** against **LEITH SMITH, RICHARD PHILLIPS,** and **DALE EDDINGS**; and
- **COUNTS 2** and **4** against **RICHARD PHILLIPS** and **DALE EDDINGS**.

**IT IS ORDERED** that all other claims and defendants are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. This includes **COUNTS 3, 5,** and **6** and Defendants **STEVENSON, GARDEN, BENZING, REED, WARD,** and **ADVANCED HEALTH CARE, INC. The Clerk's Office is DIRECTED to TERMINATE these defendants as parties in CM/ECF and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS ORDERED** that Plaintiff's request for unspecified injunctive relief is **DISMISSED** without prejudice.

With regard to **COUNTS 1, 2,** and **4**, the Clerk of Court shall prepare for Defendants **SMITH, PHILLIPS,** and **EDDINGS**, in their individual capacities: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 13), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ORDERED** that, if a Defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint (Doc. 13) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should only respond to the issues stated in this Merits Review Order.**

**IT IS ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. FED. R. CIV. P. 41(b).

**IT IS SO ORDERED**.

**DATED: 12/7/2022**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**

## Notice

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.